**2023 IL 128428**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 128428)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
MIGUEL WEBSTER, Appellee.

*Opinion filed November 30, 2023.*

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Holder White, Cunningham, and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1     After a jury trial, defendant Miguel Webster was convicted of first degree murder and sentenced to a term of 40 years' imprisonment. The appellate court, in a split decision, vacated defendant's sentence and remanded the matter for a new sentencing hearing. 2022 IL App (1st) 182305-U. In doing so, the majority relied upon Illinois Supreme Court Rule 366(a)(1), (5) (eff. Feb. 1, 1994). We

subsequently allowed the State's petition for leave to appeal and now hold that, absent a finding of error or abuse of discretion, the appellate court is without authority to vacate a defendant's sentence and remand the matter for resentencing. Accordingly, we reverse the judgment of the appellate court and reinstate defendant's 40-year sentence.

¶ 2                                                    BACKGROUND

¶ 3        Defendant, who was 17 years old, fatally shot 15-year-old Asonte Gutierrez with a double-barrel, sawed-off shotgun while in the garage behind defendant's home. Gutierrez sustained a shotgun wound to his hand that was consistent with his arm having been in a defensive position and two shotgun wounds to his face. Defendant then hid the shotgun in the box spring under his mattress, dragged Gutierrez's body down the alley to an area next to a neighboring garage, and tried to clean the crime scene with towels and bleach. He also discarded numerous bloodstained items in neighboring garbage receptacles and then returned to his house.

¶ 4        In a video-recorded interview at the police station, defendant initially said that no one had been at his house that day, he had not been in his garage for at least a week, and he had last seen Gutierrez about a month earlier. Eventually, however, defendant admitted that he shot Gutierrez in the garage. He explained that Gutierrez had knocked on his bedroom window and told him to come to the garage. Once in the garage, Gutierrez allegedly pulled out a shotgun, pointed it at defendant, and pulled one of the hammers. Defendant believed Gutierrez was going to shoot him so he grabbed the shotgun from Gutierrez, "blacked out," and shot Gutierrez twice. Defendant agreed with the detectives' suggestion that he shot Gutierrez the second time to "finish him off."

¶ 5        At trial in Cook County circuit court, defendant testified that Gutierrez had been a childhood friend. However, several months before the shooting, defendant and Gutierrez had a falling out when Gutierrez called defendant a "bitch" while the two were participating in a basketball game. After the game, defendant and Gutierrez exchanged words over Facebook, with Gutierrez threatening to "smoke [defendant's] ass," which defendant interpreted as a death threat. The two later reconciled. About two weeks later, Gutierrez drove to defendant's house and gave

defendant the shotgun along with several shotgun shells and asked him to hold on to them.

¶ 6 Defendant testified that, on the night of the shooting, Gutierrez knocked on defendant's bedroom window and told him to come to the garage with the shotgun. Defendant went to the garage and gave Gutierrez the shotgun. Gutierrez asked if it was loaded, and defendant said that it was. According to defendant, Gutierrez then pointed the shotgun at defendant's face but did not say anything. Defendant pushed the shotgun away, but Gutierrez again pointed it at his face and pulled one of the hammers. Defendant pulled the gun out of Gutierrez's hands and, with "rushed judgment," shot twice.

¶ 7 Defendant admitted that, when he talked to the police at the station, he was not initially honest but eventually told the truth. Defendant disagreed with the notion that he wanted to "finish [Gutierrez] off" with the second shot. Instead, when Gutierrez pointed the gun at him, defendant thought he was going to die and that he had to defend himself. Defendant, however, acknowledged that Gutierrez did not orally threaten to kill him.

¶ 8 At the jury instruction conference, the trial judge agreed to instruct the jury on self-defense and second degree murder. The jury ultimately returned a verdict finding defendant guilty of first degree murder. The jury also found that defendant personally discharged a firearm that proximately caused Gutierrez's death.

¶ 9 At defendant's sentencing hearing, the trial judge stated that she had considered the presentence investigation report, the arguments made by the parties, and "all of the factors in aggravation and mitigation." Specifically, the trial judge explained:

"The court has presided over this case since its inception. I arraigned the defendant myself on October 23, 2012 so [defendant] has been pending in front of this court for six years. ***

        ***

There's a lot of things that this court has considered. I'm considering mitigation certainly in that the strongest thing the court is considering is the age of the defendant. *** He was very close to turning 18 years of age. So the court does have the discretion with regards to the gun enhancement. It's close, but

the court does have the discretion with regard to whether or not to impose the extra 25 years to life that this court must impose on people over 18 years of age and up for committing an offense such as this.

\*\*\*

He's never been in trouble before. He does not come to this court with any juvenile history. He was 17. So he didn't come to court with any history, juvenile history, nothing.

However, the defendant committed a very, very serious offense. He committed the most serious offense known to man. He killed a young man. I'm also looking at the aggravation in this case. He killed a 15-year-old young man. He being 17 years of age. He has consistently stated that it was an accident in that it was Mr. Gutierrez who pointed the gun at the defendant first. The jury obviously found something different. They found the defendant guilty of first degree murder intentionally killing Asante Gutierrez.

[Defendant] shot Mr. Gutierrez two times in the face and then proceeded to clean up the area where this occurred. He then dragged his body outside of this garage and left his body outside for people or someone to come across. The court clearly recalls that as well; that a 15-year-old's body was dumped outside down an alley from where [defendant] resided after he shot him and killed him.

The court considers that when looking at the defendant's maturity or lack of maturity. I don't know if the defendant panicked, but certainly I'm looking at all his actions on this day. So that the court finds to be more toward aggravation when looking at an appropriate sentence in this matter. The defendant's actions, what he did, on the date of September 11, 2018 [*sic*]. However, on that day the defendant was 17 years of age. I do find he lacked maturity. I do find that it is not appropriate to impose the gun enhancement for personally discharging a firearm for the reasons just set forth.

However, the court does find that the appropriate sentence is a sentence of 40 years of incarceration in the Illinois Department of Corrections. \*\*\*

\* \* \*

- 4 -

*** The defendant will be 57 years of age at the time he is released from the penitentiary; that certainly [is] young enough to have been rehabilitated and to go on with his life after this tragic incident. That's the reason the court decided not to impose the additional gun enhancement. And again, nothing this court does today is going to right this terrible wrong, but the court finds that sentence [of 40 years] is an appropriate sentence."

The trial judge subsequently denied defendant's motion to reconsider sentencing, stating: "The court declined to impose the additional gun enhancement, however, the court finds the sentence [of 40 years] is an appropriate sentence based on the actions of the defendant on September 11, 2012."

¶ 10 Defendant appealed, challenging his conviction and sentence. Specifically, defendant argued that his conviction should be reduced from first to second degree murder because he had a subjective, though unreasonable, fear for his life when he shot Gutierrez. 2022 IL App (1st) 182305-U, ¶ 25. Defendant also argued that his sentence is unconstitutional under *People v. Buffer*, 2019 IL 122327, or, in the alternative, that the matter should be remanded for reconsideration in light of *Buffer*, 2022 IL App (1st) 182305-U, ¶ 25.

¶ 11 As to defendant's conviction, the appellate court unanimously found "that a rational juror could have concluded that [defendant] failed to prove imperfect self defense by a preponderance of the evidence." *Id.* ¶ 32. The court therefore declined to reduce defendant's first degree murder conviction to second degree murder.

¶ 12 The appellate court then proceeded to examine the constitutionality of defendant's sentence. Applying our holding in *Buffer*, the court unanimously found defendant's sentence to be constitutional. Both the majority and the partial dissent acknowledged that defendant was sentenced to exactly 40 years of imprisonment and thus he did not receive a *de facto* life sentence. *Id.* ¶ 37; *id.* ¶ 52 (Pierce, P.J., dissenting in part). Regardless of this unanimous constitutional finding, however, the majority proceeded to cite Rule 366(a)(1), (5) in holding that "[r]emandment for [r]esentencing [i]s [n]evertheless [p]roper." *Id.* ¶ 38 (majority opinion). The majority's vacatur of defendant's sentence and remand for resentencing was based upon its belief that "the [trial] judge did not intend to impose on [defendant]—

whom she clearly found had rehabilitative potential—a sentence that was one day short of life in prison." *Id.* ¶ 39. The majority further stated:

> "The judge in this case took great care in imposing [defendant's] sentence, holding a lengthy sentencing hearing and explaining carefully why she did not impose the gun enhancement and why she imposed the sentence that she did. Where, as here, the case is still pending on direct appeal, the legal landscape has shifted, such that this is now the lengthiest sentence that could have been imposed on this defendant, and the sentencing judge's statements call into question whether that is what she wanted to do in this case, it seems only fair to both the judge and to [defendant] to allow the judge to reconsider the sentence in light of *Buffer*." *Id.* ¶ 45.

¶ 13    The partial dissent disagreed with this portion of the majority's analysis. The dissent believed that, because there was no finding of error by the majority, the appellate court lacked the authority to vacate defendant's sentence and remand for resentencing. *Id.* ¶ 55 (Pierce, P.J., dissenting in part).

¶ 14                                ANALYSIS

¶ 15    The present appeal contemplates the source and scope of the appellate court's authority to vacate a criminal sentence imposed by a trial judge and remand the matter for resentencing. Here, the appellate majority vacated defendant's sentence in order to "allow the judge to reconsider the sentence in light of *Buffer*." *Id.* ¶ 45 (majority opinion). The parties vehemently disagree over whether the majority, in doing so, found an underlying sentencing error or an abuse of discretion with respect to defendant's sentence. The State, as appellant, posits that no error or abuse of discretion was found and therefore concludes that the appellate court lacked the authority to vacate and remand the matter absent such a finding. Defendant, as appellee, argues the opposite—that the majority did in fact find error and therefore vacatur and remand were justified. The relevance of this disagreement is simple: If the majority did in fact find the existence of a sentencing error or that the trial judge abused her discretion in fashioning defendant's sentence, such a finding would act to vest the appellate court with the authority under Illinois Supreme Court Rule 615(b) (eff. Jan. 1, 1967) to vacate the improper sentence and remand the matter for resentencing. Neither party disputes this fact. Alternatively, however, if the

- 6 -

majority did not find an error or an abuse of discretion, we must then answer the secondary question of whether such a finding is a condition precedent to the exercise of said authority.

¶ 16        At the outset, we clarify our standard of review. Neither party has adequately set forth the appropriate standard of review with respect to the *specific* questions before this court—(1) did the appellate majority find that defendant's sentence was the result of an error or abuse of discretion by the trial judge, and (2) if it did not, is such a finding a condition precedent to the exercise of the appellate court's authority under our applicable rules. While the State notes that the interpretation of our rules is subject to *de novo* review, it does not address the appropriate standard with respect to the first question. Alternatively, defendant generically contends that because he "received a sentence of 40 years, which is not a *de facto* life sentence, this Court's review is for an abuse of discretion." Our review of an appellate opinion to determine whether the appellate court found an error or an abuse of discretion with respect to a defendant's sentence, however, is not of a deferential nature. In other words, the present appeal does not call on us to review the trial judge's discretion in weighing all relevant evidence in aggravation and mitigation. If this were the *specific* question before us, defendant would be correct that our review would be for an abuse of discretion. We, however, are not reviewing the propriety of the trial judge's 40-year sentence. Instead, the parties' arguments and procedural posture of this case require us to examine the actions and authority of the appellate court, not the trial court. More specifically, we are called to review the majority's opinion and determine whether it did in fact find an underlying error or abuse of discretion prior to vacating defendant's sentence. If it did not, we must then determine whether the majority exceeded its authority under our rules when it vacated defendant's sentence and remanded the matter for resentencing absent such a finding. Because the first question does not involve one of deference and the second question contemplates the interpretation of our rules, we hold that both questions are subject to *de novo* review. We now turn to the initial question of whether the majority's opinion contains a finding of error or a finding of an abuse of discretion by the trial judge.

¶ 17        The trial judge sentenced defendant to a term of 40 years' imprisonment. On direct appeal, the majority held that "[t]he sentencing judge's analysis and comments in this case call into question whether she would have imposed a 40-year

sentence if she had known that our supreme court would soon hold that this was the longest constitutionally permissible sentence available." *Id.* ¶ 40. The majority proceeded to reject the dissent's contention that it was "wrong in declaring that the 40-year sentence is the maximum sentence that could be constitutionally imposed." *Id.* ¶ 55 (Pierce, P.J., dissenting in part). The majority stated:

> "The dissent [citation] questions our statement that the 40-year sentence imposed on [defendant] was the longest sentence that could have constitutionally been imposed. However, it clearly was. Given the sentencing judge's finding that [defendant] had rehabilitative potential, any longer sentence would have violated the eighth amendment of the United States Constitution." *Id.* ¶ 46 (majority opinion).

¶ 18    Defendant now adopts the above reasoning in support of his argument that the majority did in fact find that the trial judge committed a sentencing error. Specifically, defendant argues that his sentence is "in conflict and inconsistent" with the trial judge's mitigating findings "because a sentence of 40 years is a mere hair's breadth away from a *de facto* life sentence."

¶ 19    The State correctly notes, however, that the actual sentencing range defendant faced based on the jury's verdict of first degree murder was 20 to 60 years' imprisonment. See 730 ILCS 5/5-4.5-20(a) (West 2012). Defendant was also eligible for a sentence enhancement of 25 years based on the jury's finding that he personally discharged a firearm that proximately caused another person's death (see *id.* § 5-8-1(a)(1)(d)), but the trial judge had discretion not to impose the enhancement due to defendant's age at the time of the offense (730 ILCS 5/5-4.5-105(b) (West 2016)). While a sentence beyond 40 years would have qualified as a *de facto* life sentence under *Buffer*, the trial judge in the instant case still had the discretion under the holding of the United States Supreme Court in *Miller v. Alabama*, 567 U.S. 460, 483 (2012), to impose a *de facto* life sentence in excess of 40 years, so long as the trial judge considered defendant's age, as well as the circumstances of the murder. Accordingly, the majority was incorrect in believing that a 40-year sentence was the "longest sentence that could have constitutionally been imposed." 2022 IL App (1st) 182305-U, ¶ 46.

¶ 20    While the *Miller* court held that the eighth amendment prohibits *mandatory* life-without-parole sentences for murderers under 18 years of age, it did not foreclose

*discretionary* life-without-parole sentences for those offenders. *Miller*, 567 U.S. at 480 ("we do not foreclose a sentencer's ability to make that judgment in homicide cases"); see *People v. Reyes*, 2016 IL 119271, ¶ 4 (holding *Miller* did not "categorical[ly] prohibit[ ] *** life-without-parole sentences for juvenile murderers"). Instead, "the *Miller* Court mandated 'only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics— before imposing' a life-without-parole sentence." *Jones v. Mississippi*, 593 U.S. ___, ___, 141 S. Ct. 1307, 1316 (2021) (quoting *Miller*, 567 U.S. at 483); accord *People v. Lusby*, 2020 IL 124046, ¶ 52 (holding that juvenile's 130-year sentence passed "constitutional muster" because the trial judge "considered the defendant's youth and its attendant characteristics before concluding that his future should be spent in prison"). Here, defendant faced a *discretionary* sentence of up to 85 years in prison (20 to 60 years for first degree murder plus a 25-year firearm enhancement), so long as the trial judge considered defendant's youth and attendant circumstances, which it did. Specifically, the trial judge expressly noted defendant's age, lack of maturity, rehabilitative potential, and the circumstances of the murder. Therefore, the "longest constitutionally permissible sentence available" (2022 IL App (1st) 182305-U, ¶ 40) to be imposed was 85 years, not 40 years.

¶ 21    Defendant's 40-year sentence is clearly within the applicable statutory sentencing limits and is therefore presumed proper. See *People v. Stacey*, 193 Ill. 2d 203, 210 (2000) (holding a sentence within statutory limits is presumed proper and will only be "deemed excessive and the result of an abuse of discretion by the trial court where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense"). A review of the majority's opinion illustrates that it did not vacate defendant's 40-year sentence on the basis that it constituted an abuse of discretion or was constitutionally invalid. Instead, the majority relied upon the misguided belief that defendant could not be sentenced to more than 40 years' imprisonment. Relying upon this misunderstanding, the majority concluded: "[I]t seems only *fair* to both the judge and to [defendant] to allow the judge to reconsider the sentence in light of *Buffer*." (Emphasis added.) 2022 IL App (1st) 182305-U, ¶ 45. Thus, the majority's decision rests upon perceived principles of equity, not a substantive finding of error.

¶ 22    Defendant's brief before this court presents the same misunderstanding with respect to the applicable statutory sentencing limits. Specifically, defendant contends:

> "Here, because the judge opted not to impose the firearm enhancement given [defendant's] age and the fact that his actions reflected the transient immaturity of youth, the applicable sentencing range for this offense effectively changed from 20 to 60 years to 20 to 40 years after this Court issued its decision in *Buffer*. [Citations.] So instead of imposing a mid-range sentence, the judge imposed the harshest possible sentence she could impose without imposing a *de facto* life sentence."

¶ 23    Defendant, like the majority below, is incorrect. Defendant's first degree murder conviction and the potential firearm enhancement penalty subjected defendant to a *discretionary* life-without-parole sentence/*de facto* life sentence (85 years). Our decision in *Buffer*, like the United State Supreme Court's decision in *Miller*, did not ban the *discretionary* imposition of such a sentence upon a juvenile murderer. *Buffer* simply addressed when a juvenile defendant's prison term is long enough to be considered a *de facto* life sentence. *Buffer*, 2019 IL 122327, ¶ 41. Here, even though defendant was potentially eligible for a *de facto* life sentence, there is no dispute that the trial judge did not impose such a sentence. Instead, the trial judge considered defendant's individual characteristics and life circumstances, including age, as well as the circumstances of the murder (see *Miller*, 567 U.S. at 480 n.8), and ultimately decided to impose a midrange sentence upon defendant (40 years). In fact, the record clearly reveals that it was defendant's age, lack of maturity, and rehabilitative potential that led the trial judge to not impose a *discretionary* life-without-parole sentence/*de facto* life sentence. The majority expressly acknowledged this reality: "The [trial] judge in this case took great care in imposing [defendant's] sentence, holding a lengthy sentencing hearing and explaining carefully why she did not impose the gun enhancement and why she imposed the sentence that she did." 2022 IL App (1st) 182305-U, ¶ 45. Likewise, defendant, in his brief before this court, acknowledges that "the trial judge in [defendant's] case conducted a hearing that complied with *** the direction of *Miller*." Simply put, the majority's vacatur and remand of defendant's sentence were not based upon any underlying error or abuse of discretion finding. Thus, we

now turn to the secondary question of whether the appellate court may vacate a defendant's sentence and remand for resentencing absent such a finding.

¶ 24     As authority for its actions, the appellate majority cited Rule 366(a)(1), (5). Specifically, it stated:

>     "Illinois Supreme Court Rule 366[(a)(1), (5) (eff. Feb. 1, 1994)] provides that, 'in its discretion, and on such terms as it deems just,' this court may 'grant any relief, including a remandment *** that the case may require.' [Citation.] We have exercised this power to remand when the circumstances underlying a sentencing judge's exercise of discretion are called into question by subsequent events. For example, where one of several convictions is reversed on direct appeal, we will remand for resentencing where we cannot determine whether the conviction vacated could have influenced the circuit court in imposing sentences for the other convictions. See, *e.g.*, *People v. Alejo*s, 97 Ill. 2d 502, 511 (1983); *People v. Figures*, 216 Ill. App. 3d 398, 404 (1991)." *Id.* ¶ 40.

¶ 25     We initially note that the two cases cited by the appellate majority (*Alejos* and *Figures*) are distinguishable. Neither case references, let alone relies upon, Rule 366. More importantly, the dispositional remand in both cases is based upon an underlying finding of error, unlike the instant case, which is based upon perceived "fair[ness]." See 2022 IL App (1st) 182305-U, ¶ 45. For example, the defendant in *Alejos* was convicted of voluntary manslaughter and of armed violence based on voluntary manslaughter. *People v. Alejo*s, 97 Ill. 2d 502, 505 (1983). On review, we reversed the defendant's armed violence conviction on the grounds that voluntary manslaughter was not a basis for the armed violence conviction since the carrying of weapons was not a criminal offense in all instances. *Id.* at 510-11. We then remanded for resentencing on the manslaughter conviction in order to guard against the possibility that the presence of an *improper* armed violence conviction might have influenced the trial judge's sentence on the manslaughter charge. *Id.* at 511-12. Similarly, the defendant in *People v. Figures*, 216 Ill. App. 3d 398, 399 (1991), was convicted of aggravated battery, armed violence, and attempted murder. On direct appeal, the appellate court vacated the defendant's armed violence conviction on the basis that there was insufficient evidence that defendant inflicted "great bodily harm" upon the victim. *Id.* at 402. The appellate court then remanded for resentencing because the court could not determine whether the

*improper* armed violence conviction influenced the trial judge when imposing sentences for the remaining proper convictions of attempted murder and aggravated battery. *Id.* at 404. *Alejos* and *Figures* are simply not relevant to the question of whether Rule 366(a) authorizes the appellate court to vacate a criminal sentence and remand for resentencing absent an underlying finding of error or abuse of discretion.

¶ 26        Indeed, defendant does not contend that Rule 366(a) justifies the appellate court's action in the instant case. Instead, defendant all but concedes that the majority's reliance on Rule 366(a) was misplaced. Specifically, defendant in his brief states: "And although the appellate court's reliance on Supreme Court Rule 366[(a)] to order the remand may not have been a proper application of that rule, Supreme Court Rule 615(b) authorized the remand for resentencing." The State also asserts that the appellate court's reliance upon Rule 366(a) was improper and that it is instead Rule 615(b) that is implicated in this case.

¶ 27        The parties are correct with respect to the applicable supreme court rule. We hold that Rule 615(b) is the operative rule in that it sets out the authority of reviewing courts in *criminal cases*. See *People v. Young*, 124 Ill. 2d 147, 152 (1988). Alternatively, Rule 366(a) sets out the authority of reviewing courts in *civil cases*. *Id.* This court has previously explained:

> "The authority in civil cases, as set out in Rule 366[(a)], is much broader and more specifically stated than is the authority of a reviewing court in criminal appeals as stated in Rule 615(b). The authority to enter an order of remandment in criminal cases is not specifically granted in Rule 615(b), but is in Rule 366. It is obvious, however, that a reviewing court has such authority in criminal cases when used in connection with other authority specifically stated in Rule 615(b)." *Id.*

¶ 28        Having determined that Rule 615(b) is the applicable rule governing the appellate court's authority in the instant case, we turn to the State's argument that a court of review may disturb a sentence only if it was "unlawful or amounted to an abuse of discretion." In essence, the State argues that such a finding is a condition precedent to the appellate court's authority to vacate and remand. The State concludes that, "because the appellate court found no error or abuse of discretion in defendant's sentence, Rule 615(b) required it to affirm the sentence."

Defendant does not respond to this specific argument. Instead, defendant merely contends that the appellate court did in fact find a sentencing error and therefore vacatur and remand were appropriate under Rule 615(b). For reasons already discussed above, defendant is incorrect. Furthermore, we agree with the State's contention that a court of review is without authority to vacate and remand a defendant's criminal sentence absent a finding of error or a finding of an abuse of discretion by the trial judge.

¶ 29    Rule 615(b) provides, in its entirety:

"Powers of the Reviewing Court. On appeal the reviewing court may:

(1) reverse, affirm, or modify the judgment or order from which the appeal is taken;

(2) set aside, affirm, or modify any or all of the proceedings subsequent to or dependent upon the judgment or order from which the appeal is taken;

(3) reduce the degree of the offense of which the appellant was convicted;

(4) reduce the punishment imposed by the trial court; or

(5) order a new trial." Ill. S. Ct. R. 615(b) (eff. Jan. 1, 1967).

While this court has not previously examined the appellate court's authority under Rule 615(b) to *vacate* and *remand* absent a finding of error or abuse of discretion, we have addressed the question of whether the appellate court has the authority under Rule 615(b) to *reduce* a sentence absent such a finding. In *People v. Perruquet*, 68 Ill. 2d 149, 153-54 (1977), we expressly held that the appellate court cannot reduce a defendant's sentence absent a finding of an abuse of discretion. Specifically, we explained:

"Our Rule 615(b)(4) grants reviewing courts the power to reduce the sentence imposed by the trial court. [Citation.] The rule itself does not address the scope of this power or the circumstances under which it should be exercised. However, our decisions have firmly established that the imposition of a sentence is a matter of judicial discretion and that, absent an abuse of this discretion, the sentence of the trial court may not be altered upon review.

- 13 -

[Citations.] And this test has been applied in numerous appellate court opinions. [Citations.]

The defendant contends, however, that a reviewing court may reduce a sentence absent a finding of an abuse of discretion. This contention is clearly incorrect under the previously cited decisions of this court which have interpreted Rule 615(b). To whatever extent the appellate opinion implicitly holds that an abuse of sentencing discretion need not be shown in order for a reviewing court to alter a sentence, that opinion is erroneous.

We have frequently stated that the trial judge is normally in a better position to determine the punishment to be imposed than the courts of review. [Citations.] A reasoned judgment as to the proper sentence to be imposed must be based upon the particular circumstances of each individual case. [Citation.] Such a judgment depends upon many factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citation.] The trial judge, in the course of the trial and the sentencing hearing, has an opportunity to consider these factors 'which is superior to that afforded by the cold record in this court.' [Citation.] We continue to find that the trial court is normally the proper forum in which a suitable sentence is to be determined and the trial judge's decisions in regard to sentencing are entitled to great deference and weight. We therefore reaffirm our long-standing rule that absent an abuse of discretion by the trial court a sentence may not be altered upon review." *Id.*

¶ 30     The above reasoning has been subsequently reaffirmed by this court on multiple occasions. For example, in *People v. O'Neal*, 125 Ill. 2d 291, 299 (1988), we held that the appellate court was not required to use the phrase " 'abuse of discretion' " in its order modifying the trial court's imposition of sentence from consecutive to concurrent terms. In doing so, we explained that "reviewing courts exercise the authority granted under Rule 615(b)(4) cautiously, and the scope of an appellate court's examination of a sentence imposed by the trial court is limited to whether the record discloses that the trial court abused its discretion." *Id.* at 298. We concluded: "[S]ince the [appellate] court implicitly held that the imposition of consecutive sentences in this case was an abuse of discretion, the court did not

exceed its authority under Rule 615(b)(4)." *Id.* at 299-300. Significantly, no such implicit finding exists in the appellate court's order before us today.

¶ 31 In *People v. Jones*, 168 Ill. 2d 367, 378 (1995) we held:

"In light of the jurisprudence of this court and the plain language of Rules 615(b)(1) and (b)(4), we conclude a court of review has the power to reduce a defendant's sentence on appeal once it has been determined that the trial court's sentencing decision was unlawful or an abuse of discretion."

In *People v. Alexander*, 239 Ill. 2d 205, 212 (2010) we stated: "A reviewing court may not alter a defendant's sentence absent an abuse of discretion by the trial court." See *People v. Hauschild*, 226 Ill. 2d 63, 90 (2007) (holding that, "[a]bsent an abuse of discretion by the trial court, sentences may not be altered on review").

¶ 32 Today, we again reaffirm the principles and reasoning set out in *Perruquet*, *O'Neal*, *Jones*, and *Alexander*. More specifically, we hold that, absent a finding of error or abuse of discretion, the appellate court is without authority under Rule 615(b) to vacate a defendant's sentence and remand the matter for resentencing. For these same reasons, we also hold that the appellate court may not "modify" a sentence absent such a finding. Ill. S. Ct. R. 615(b) (eff. Jan. 1, 1967). Accordingly, a constitutional sentence, devoid of error and resulting from a trial judge's proper exercise of discretion, shall be affirmed on review.

¶ 33 While we have already held that Rule 366(a) does not apply in the instant case, we take this opportunity to make clear that Rule 366(a) is not intended to be used as a mechanism in criminal cases to provide relief that otherwise would not be appropriate under Rule 615(b). Finally, we decline defendant's alternative request to reduce his sentence or order resentencing under our constitutionally provided supervisory authority. Defendant identifies no "exceptional circumstance[ ]" that would support this court substituting its sentencing judgment for that of the trial judge or requiring the trial judge to reconsider her sentence. *Statland v. Freeman*, 112 Ill. 2d 494, 497 (1986) (holding "this court will not exercise its supervisory authority save under exceptional circumstances").

¶ 34                                     CONCLUSION

¶ 35        For the foregoing reasons, we reverse the judgment of the appellate court and reinstate defendant's 40-year sentence.

¶ 36        Appellate court judgment reversed.

¶ 37        Circuit court judgment affirmed.