2024 IL App (1st) 220615-U

No. 1-22-0615

Order filed March 11, 2024.

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 93 CR 21320 |
| | ) | |
| | ) | The Honorable |
| SAUL AGUADO, | ) | Michael P. Toomin, |
| | ) | Diana L. Kenworthy, |
| Defendant-Appellant. | ) | Judges Presiding. |

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction affirmed where his 60-year prison sentence for the first degree murder of his infant son was not excessive.

¶ 2    Defendant Saul Aguado pled guilty to first degree murder in 1994 and, in his absence from his 1995 sentencing hearing, was sentenced to 60 years' imprisonment. In 2017, he filed a motion for a new trial and sentencing challenging his sentencing *in absentia* pursuant to section 115-4(e) of the Code of Criminal Procedure (725 ILCS 5/115-4.1(e) (West 2016)), which the trial court

denied. On appeal, defendant contends that his 60-year prison sentence is excessive in light of significant mitigating factors. We affirm.

¶ 3     Defendant was charged with the first degree murder of D.A., his infant son, by beating him with his hands on or about November 6, 1992.

¶ 4     The court ordered a pretrial investigation report (PTI) in November 1994. The PTI stated that defendant was born in Mexico in 1966, was a legal resident of the United States, had no prior convictions, attended but did not complete college, was separated from his wife, and was allowed to visit his remaining child under supervision. He was working as a cook in a restaurant when the PTI was prepared and worked previously as a cook and waiter. He cooperated with psychological evaluations but did not believe he needed mental health treatment.

¶ 5     In December 1994, the court held a plea conference, after which counsel said defendant would plead guilty. Defendant waived his right to a jury trial, and the court admonished him that his guilty plea to first degree murder would waive his right to a trial. The court admonished him that his possible prison sentence was 20 to 60 years, extendible to 100 years or the death penalty "[i]f the State were inclined [and] able to show this was a killing that was heinous or brutal and indicative of wanton cruelty." Defendant said he understood. He agreed that he was made no promises "[o]ther than the results of the conference."

¶ 6     The parties stipulated to the factual basis for defendant's plea. If called, a physician would testify that he saw D.A. in November 1992 "with severe brain damage and in a vegetative state" requiring a respirator. Testing revealed D.A.'s "old and new injuries" to his skull and brain "resulting in acute and chronic subdural effusion." The injuries were caused by shaking D.A. or other trauma to him. Another physician would testify that D.A.'s August 1993 autopsy showed he

was 11 months old and died of "cerebral injury and subdural hematoma due to blunt trauma." A police officer would testify that defendant admitted that D.A.'s injuries "were a result of his anger."

¶ 7    A prosecutor would testify that defendant gave a written statement. Defendant said that he worked at night and his wife worked during the day so he cared for their two children during the day despite it being his time to sleep. On October 20, 1992, D.A. "was upset and crying all day." Defendant admitted pulling him from his sleeping chair by his shoulder "fast and without supporting [his] head or neck," then shaking him and forcing him onto a bed to wrap him in a blanket. On November 6, 1992, D.A. would not stop crying, and defendant, "mad at [D.A.] and frustrated," grabbed D.A and pulled hard on the baby seat he was in, causing him to fall out of it and roll across the floor, head bouncing as he rolled, until his head "slammed" into a bed frame. D.A. was screaming when defendant put him into bed but then had trouble breathing, was foaming from the nose, and shaking, so defendant called for an ambulance.

¶ 8    Following the factual basis, the court accepted defendant's plea and found him guilty of one count of first degree murder. Noting the filing of the PTI, the court stated that the case would be continued for "a special sentencing hearing." The court told defendant that his sentencing would occur on January 27, 1995, and "the range of penalties I described to you are still available." It informed defendant he would have to attend sentencing to receive "the benefits that were arrived by reason of the conference today," and he could "receive a sentence all the way up to 100 years" if he did not attend.[1] Defendant said he understood these admonishments.

---

[1] Nowhere on the record of that day's proceedings was it stated that defendant was pleading guilty in exchange for a 35-year prison sentence or that defendant and the State had an agreement to that effect.

¶ 9    On January 27, 1995, defendant did not appear in court. Counsel informed the court that he tried to contact defendant; his secretary spoke to defendant earlier in January; and defendant had not been at work since January 13. The court issued an arrest warrant for defendant and continued the case to March 10, 1995, to "await for [his] presence if he is to show up."

¶ 10    On that day, defendant also did not appear in court, and the court proceeded with sentencing. The court noted that the "agreed disposition" from the conference was "by the wayside" in defendant's absence. The State asked for a death sentencing hearing on the basis of defendant's conduct towards two-month-old D.A. being brutal and heinous. The court found defendant not eligible for the death penalty.

¶ 11    The State argued that defendant could receive an extended-term sentence because D.A. was under 12 years old. Defense counsel asked for the 35-year sentence from the conference, arguing that defendant was a first-time offender and legal resident who worked to support his family. The court sentenced defendant to 60 years' imprisonment, stating that it considered the aggravating and mitigating factors including those in the PTI and "the facts and circumstances leading to the demise of" D.A.

¶ 12    At this point, the report of proceedings for March 10, 1995, available to us ends, although the common law record reflects that the proceedings continued regarding, at a minimum, counsel's attorney fee petition.[2]

---

[2] The record on appeal does not include a certified copy of the transcript for March 10, 1995, but instead an explanation from the court reporter's office of why it could not provide a copy. A partial copy of the March 10 hearing is attached to defendant's petition for relief from judgment in the common law record. The copy is complete only to the point the court pronounced sentence. Both parties' briefs cite the attachment as the record of the sentencing hearing.

¶ 13    In 2016, defendant filed a petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2016)), claiming that his sentence was void because (1) the court did not admonish him regarding the plea conference as required by Supreme Court Rule 402(d)(1) (eff. July 1, 2012), (2) he did not receive the benefit of his plea bargain when he received 60 years' imprisonment rather than 35 years as the court "concurred," (3) the court did not admonish him regarding mandatory supervised release, and (4) he did not receive full credit for his pretrial detention. In his attached 2016 affidavit, defendant averred in relevant part that he went to Mexico in January 1995 when his father fell ill but he himself fell ill for three months and required thyroid surgery. He also averred that, when he learned of the warrant against him, "I did not know what to do." The circuit court dismissed the petition in December 2016. Defendant did not appeal.

¶ 14    In July 2017, defendant filed his motion for a new trial and sentencing pursuant to section 115-4.1(e). He claimed that he was not at fault for failing to appear for sentencing because he had been transported out of the United States with no lawful way to return. The motion was supported by defendant's general affidavit that the motion's contents were true.

¶ 15    In October 2017, the court denied defendant's motion without an evidentiary hearing, finding that he failed to provide sufficient detail or documentation for his claims. On appeal, we remanded because an evidentiary hearing must be held on a section 115-4.1(e) motion. *People v. Aguado*, No. 1-17-3138 (2019).

¶ 16    On April 21, 2022, the trial court held an evidentiary hearing on defendant's motion, with defendant as the sole witness. Defendant admitted that, after he pled guilty in December 1994, he knew his case was continued to January 27, 1995, for sentencing with his understanding that he

would receive 35 years in prison. However, his father fell ill around January 10, 1995, and defendant went to Mexico to visit him, intending to stay a week. While there, defendant fell ill with a thyroid condition and decided to go to the hospital there because it was cheaper. While he was told that he would be in the hospital for only a day, he had "side effects" including cramps, muscle spasms, and difficulty breathing, and "was in treatment for six to eight months." When he tried to return to the United States in September 1996, United States immigration authorities "took my car, *** tore up my documents," and sent him back to Mexico. He did not try to hide in Mexico, and he was arrested in August 2005.

¶ 17    On cross-examination, when asked who his doctor was in Mexico, defendant answered only "Sergio." The papers destroyed at the border in 1996 did not include any documents from his medical treatment in Mexico. While in Mexico, defendant called trial counsel's office "a couple of times. That's all" but did not discuss his case. He admitted that he was extradited from Mexico and had no intention to return for this case after his 1996 attempt.

¶ 18    Following arguments, the court denied defendant's motion, finding that he decided to go to Mexico in January 1995, decided to be treated for his thyroid there because it would be cheaper, and decided to stay in Mexico. The court did not find it credible that, with a warrant issued for his arrest, immigration authorities would have sent him back to Mexico rather than arresting him. This appeal timely followed.

¶ 19    On appeal, defendant contends that his 60-year prison sentence is excessive in light of significant mitigating factors.

¶ 20    Section 115-4.1 governs proceedings *in absentia*. 725 ILCS 5/115-4.1 (West 2016). In particular, section 115-4.1(e) provides that "When a defendant who in his absence has been either

convicted or sentenced or both convicted and sentenced appears before the court, he must be granted a new trial or new sentencing hearing if the defendant can establish that his failure to appear in court was both without his fault and due to circumstances beyond his control." *Id*. § 115-4.1(e). An evidentiary hearing must be held on such a motion. *Id*. The denial of such a motion is appealable, and the notice of appeal "may also include a request for review of the judgment and sentence not vacated by the trial court." *Id*. § 115-4.1(g).

¶ 21 As a threshold matter, defendant raises no contention regarding the denial of his section 115-4.1(e) motion; that is, he does not contend that the court erred in rejecting his claim that his failure to appear was without his fault and due to circumstances beyond his control. Rather, he solely claims that his sentence is excessive. See *Id*. § 115-4.1(g) (the notice of appeal from the denial of a section 115-4.1(e) motion "may also include a request for review of the judgment and sentence not vacated by the trial court").

¶ 22 Defendant acknowledges he did not preserve his claim that his sentence was excessive by raising it in a posttrial motion. See *People v. Williams*, 2022 IL 126918, ¶ 48. However, he argues that his forfeiture of his sentencing challenge should be considered under the plain-error doctrine, and that the evidence at the sentencing hearing was closely balanced.

¶ 23 The plain-error doctrine allows a reviewing court to consider an otherwise-forfeited error that is clear and obvious if either: (1) the evidence was closely balanced, or (2) the error is presumptively prejudicial. *Id*. ¶¶ 55-56. On a claim of plain error, we first determine whether there was error at all, as a "defendant cannot obtain relief on an unpreserved error under the plain-error doctrine if he would not have been entitled to relief on the same error if preserved." *Id*. ¶ 49. As explained below, we find no error here.

¶ 24 The trial court has broad discretion in imposing a sentence, and its sentencing decision is entitled to great deference. *People v. Webster*, 2023 IL 128428, ¶ 29. This is because it observed the defendant and the proceedings and is in a superior position to consider factors such as the defendant's credibility, demeanor, character, mentality, environment, habits, and age. *Id.* We may not modify a sentence absent an abuse of discretion, which we find only if the sentence is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *Id.* ¶¶ 21, 32. There is a strong presumption that the court based its sentencing decision on proper legal reasoning, and this court must consider the record as a whole rather than focusing on isolated portions. *People v. Garcia*, 2023 IL App (1st) 172005, ¶ 67; *People v. Jeffers*, 2022 IL App (2d) 210236, ¶ 24.

¶ 25 After reviewing the record, we find that the trial court did not abuse its discretion in sentencing defendant to 60 years' imprisonment for the first degree murder of his infant son.

¶ 26 At the time of defendant's offense, the sentence for first degree murder was 20 to 60 years' imprisonment, but natural life imprisonment could be imposed if a defendant's conduct was exceptionally brutal or heinous. Ill. Rev. Stat. 1991, ch. 38, ¶ 1005-8-1(a)(1)(a), (a)(1)(b). Similarly, an extended prison term of up to 100 years could be imposed if *either* defendant's conduct was exceptionally brutal or heinous, *or* the victim was under 12 years old at the time of the offense. Ill. Rev. Stat. 1991, ch. 38, ¶¶ 1005-5-3.2(b)(2), (b)(4)(i), 1005-8-2(a)(1). The death penalty could have been imposed if the victim was under 12 years old *and* his or her death resulted from exceptionally brutal or heinous behavior. Ill. Rev. Stat. 1991, ch. 38, ¶ 9-1(b)(7).

¶ 27 Here, the State sought the death penalty, and then an extended-term sentence based on D.A.'s age. Thus, the 60-year sentence was not just an increase from the 35-year sentence

recommended in the plea conference, as defendant argues, but also a rejection of the State's argument for a sentence beyond the unextended range of 20 to 60 years. In other words, the court imposed a sentence squarely in the middle of a possible range of 20 to 100 years' imprisonment. A sentence within the statutory range is presumed proper. *Webster*, 2023 IL 128428, ¶ 21.

¶ 28    Defendant does not dispute that his sentence was within the applicable sentencing range. Rather, he contends that his sentence was excessive where: he presented mitigation including his work to support his family and the absence of a criminal record, and the court recommended a 35-year sentence in a plea conference. He points to the plea-conference recommendation of 35 years' imprisonment as evidence that his 60-year prison sentence was excessive, arguing that the trial court's former willingness to impose a 35-year sentence demonstrates, or highlights, the excessiveness of its 60-year sentence.

¶ 29    "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The constitutional mandate is to balance the retributive and rehabilitative purposes of punishment. *People v. Elizondo*, 2021 IL App (1st) 161699, ¶ 113. However, a defendant's rehabilitative potential is not entitled to greater weight than the seriousness of the offense. *People v. Alexander*, 239 Ill. 2d 205, 214 (2010); *Garcia*, 2023 IL App (1st) 172005, ¶ 67. The trial court is presumed to have considered any evidence in mitigation placed before it. *Garcia*, 2023 IL App (1st) 172005, ¶ 67. A sentence within the statutory range is excessive if it was imposed without regard for the defendant's rehabilitative potential. *People v. Elliott*, 2022 IL App (1st) 192294, ¶ 58.

¶ 30    Taking the record as a whole, we find the court's sentence was a reasonable exercise of its discretion. In other words, the court did not impose the sentence without regard for defendant's

rehabilitative potential. The record shows that the court ordered a PTI, which reflects that defendant had no prior convictions, attended but did not complete college, was working as a cook when the PTI was prepared, and worked previously as a cook and waiter. At the sentencing hearing, defense counsel informed the court that defendant was a first-time offender and legal resident who worked to support his family. As mentioned, the trial court is presumed to have considered any evidence in mitigation placed before it. *Garcia*, 2023 IL App (1st) 172005, ¶ 67. In imposing sentence, the court expressly stated that it considered the aggravating and mitigating factors including those in the PTI and "the facts and circumstances leading to the demise of" D.A.

¶ 31 Given this record, defendant is essentially asking us to substitute our judgment for that of the trier of fact. This we cannot do. See *Alexander*, 239 Ill. 2d at 213 (reviewing court does not substitute its sentencing judgment for that of the trial court). This is especially so where, as here, the court weighed these mitigating factors against the aggravating factors presented.

¶ 32 First and foremost, defendant stipulated to the factual basis that his physical abuse left his infant son D.A. in a vegetative state in November 1992 and dead by August 1993. See *Alexander*, 239 Ill. 2d at 214; *Garcia*, 2023 IL App (1st) 172005, ¶ 67 (the seriousness of the offense is the most important factor to consider, and a defendant's rehabilitative potential is not entitled to greater weight than the seriousness of the offense). Also, defendant was told at the end of his plea hearing on what date he would be sentenced and was clearly warned that he could still receive up to 100 years in prison if he did not attend sentencing. When defendant did not attend, the court gave him over a month to appear before holding a sentencing hearing, but he again did not appear. There is a "very strong inference" that a defendant personally admonished of the time and date of the next proceedings in his or her case and the consequences of not attending has chosen not to

appear. *People v. Johnson*, 2018 IL App (2d) 160674, ¶ 12. As noted above, the State sought an extended-term sentence of up to 100 years based on D.A. being under 12 years old, which he clearly was. The court nevertheless imposed a sentence well below the statutory maximum.

¶ 33    On this record, we will not conclude that the court disregarded defendant's rehabilitative potential. Finding no error here, we find no plain error. See *Williams*, 2022 IL 126918, ¶ 49.

¶ 34    Accordingly, the judgment of the circuit court is affirmed.

¶ 35    Affirmed.