NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230556-U

NO. 4-23-0556

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 9, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Rock Island County |
| CHAD MOELLER JR., | ) | No. 21CF605 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Peter W. Church, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Harris and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment, as no issue of arguable merit existed for counsel to raise on appeal.

¶ 2    In April 2023, a jury found defendant, Chad Moeller Jr., guilty of a single count of aggravated battery (battery causing great bodily harm) (720 ILCS 5/12-3.05(a)(1) (West 2020)). After a July 2023 sentencing hearing at which the State urged the trial court to impose a sentence of five years' imprisonment, the court sentenced defendant to a term of eight years' imprisonment. Defense counsel did not file a motion to reconsider the sentence. Defendant filed a timely notice of appeal, and the court appointed appellate counsel to represent him.

¶ 3    Appellate counsel seeks to withdraw pursuant to the procedure in *Anders v. California*, 386 U.S. 738 (1967), contending that any argument she might make would be frivolous. Counsel indicates she notified defendant of this determination. We gave defendant an

opportunity to respond to the motion. Defendant has filed a response in which he merely asks for a different attorney. We grant counsel's motion to withdraw and affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5         The State charged defendant with a single count of aggravated battery (great bodily harm) (720 ILCS 5/12-3.05(a)(1) (West 2020)). The charges arose out of a July 2021 incident in which defendant struck Shawn Streitmatter, the attendant at an electronic gambling business, knocking Streitmatter to the floor and causing him to break his leg.

¶ 6         Defendant had a jury trial. The sole contested issue was whether defendant had acted in self-defense. The State offered the testimony of Streitmatter and three customers at the business. It also introduced security camera video from the business showing the leadup to defendant striking Streitmatter through the aftermath from two angles. The parties stipulated to the testimony of the doctor who examined Streitmatter's leg.

¶ 7         Streitmatter testified he worked the closing shift at a business that was a laundromat on one side and a gaming business—which Streitmatter also called a "casino"—on the other side. The laundromat side and the gaming side were separated by a wall with something like a one-way mirror. The only interior connection between the sides was through a locked area restricted to employees. The employees' area had a window at which customers presented their identification to Streitmatter. Streitmatter was the sole employee present during his shift.

¶ 8         On the evening of July 19, 2021, most of the customers were people Streitmatter recognized as "regulars." At around 11 p.m., Streitmatter went to the laundromat side to do some cleaning. He heard two people "bickering" on the gambling side. He returned to the employee area. One of the customers—a woman he recognized as a regular—came up to his window and said she was having a problem with another customer. Streitmatter later identified the man as

defendant. The woman, Maureen Stephens, testified for the State. Streitmatter told Stephens and defendant they were causing trouble and should both leave, but they did not.

¶ 9 Streitmatter left the employee area, went to the front of the gaming area, opened the door, and told defendant to leave. Streitmatter did this because he was concerned that the conflict between defendant and Stephens might become physical. Asked by defendant why Stephens was not asked to leave, Streitmatter explained he was familiar with Stephens and knew that she was loud but had no history of being physically aggressive. Defendant explained he had money in a machine, sat down, and said, "I ain't effing going anywhere." Defendant and Streitmatter had a "pretty long conversation," in which Streitmatter told him, "Cash out and leave." Streitmatter approached defendant with the intention of directing him toward the door. He said he would call the police if defendant did not leave.

¶ 10 Streitmatter said he was "in [defendant's] face," but he was not yelling. Defendant struck him on the lower jaw. Streitmatter momentarily lost consciousness, and, as the security videos show, he fell to the floor. Streitmatter's left leg "really hurt," but he could walk on it "[a] little." He went back into the employee area and pushed the "panic button" that called the police.

¶ 11 After the police left, Streitmatter finished his shift; no one was available to replace him, and the work was not usually physically demanding. The next morning, he "realized [he] was really hurt." After his initial treatment, he had to wear an orthopedic boot for "at least" two months. He also still felt occasional pain in his leg. Further, at the time of trial, the left side of his face was still numb and paralyzed from the punch.

¶ 12 Streitmatter testified he had reviewed the security camera videos; he confirmed they were an accurate representation of the events. The recordings, which are silent, are largely consistent with his testimony. Both showed Streitmatter getting very close to defendant. However,

Streitmatter did not raise his hands to defendant as he approached; he pointed toward the door with his right arm while his left arm remained at his side. Defense counsel suggested that, based on one view, Streitmatter must have been closer than a foot to defendant. Streitmatter responded that the camera angle in that recording made judging the distance difficult. He said the other recording was made from an angle that showed the distance clearly. However, he agreed he had been "in [defendant's] face." He further agreed that he had yelled at defendant but denied he had ever threatened to throw defendant out.

¶ 13　　　　The parties stipulated that Dr. Scott Collins would testify that he reviewed X-rays of Streitmatter's left leg. Those X-rays showed "a nondisplaced oblique fracture of the proximal fibula." Collins would also testify that Streitmatter suffered a sprained left ankle.

¶ 14　　　　The testimony of the three customers called by the State, Stephens, Randy M. Skinner, and Shannon Sammon, was largely consistent with Streitmatter's testimony and the video evidence. That said, the customers provided some evidence that conflicted with Streitmatter's testimony or included details not in Streitmatter's testimony or the recordings.

¶ 15　　　　Stephens testified that Streitmatter had not asked her to leave. Skinner's testimony included further details of the dispute between Stephens and defendant. Skinner said defendant appeared to have become angry quickly. He described Streitmatter as initially calling defendant, "Sir," and telling him he had to leave because he was "being belligerent." However, Streitmatter's tone after defendant refused to leave was "a little tough" and "both of them were escalating." When defendant did not leave, Streitmatter "tr[ied] to corral him out the door." Defendant and Streitmatter continued to "ha[ve] words" after Streitmatter was on the floor. Skinner testified he thought defendant was going to hit Streitmatter again, so he interposed himself between defendant and Streitmatter with his hands raised. Skinner told defendant that he was not looking for trouble

but that he would not permit defendant to hit Streitmatter again. Defendant calmed down somewhat and left. Sammon testified she was the grandmother of one of defendant's children. She described Streitmatter as "g[etting] a little too close" to defendant. Streitmatter was "really soft-spoken" and never yelled at defendant. She was "shocked" when defendant hit Streitmatter because she "didn't really see it coming." She agreed that Streitmatter did not appear to act aggressively toward defendant.

¶ 16       The State rested at the end of Sammon's testimony. The trial court denied defendant's motion for a directed verdict but ruled that the evidence supported allowing the jury to consider a self-defense instruction. The defense rested without presenting evidence.

¶ 17       The jury found defendant guilty of aggravated battery.

¶ 18       The presentencing investigation report showed that defendant, who was born in 1990, had multiple convictions in Iowa, including eight convictions involving assault, battery, or other violent behavior. He had been committed to the Iowa Department of Corrections for a controlled substance violation. Defendant reported the use of multiple substances, including, at the time of his arrest, daily use of methamphetamine.

¶ 19       At sentencing, the State asked the trial court to sentence defendant to five years' imprisonment. Defense counsel argued that although defendant's actions did not meet the standard for self-defense, defendant was nevertheless triggered by Streitmatter's "g[etting] up in his face." Counsel asked that the court impose a sentence of conditional discharge.

¶ 20       The trial court stated it would consider all statutory factors in aggravation and mitigation. It found that defendant had not acted under strong provocation and that his conduct was not induced by another. It noted his extensive criminal record, particularly his multiple convictions of offenses involving violence. It noted these convictions were mixed with drug

- 5 -

offenses, which it concluded showed defendant "clearly has substance abuse disorders, both probably alcohol and other substances." The court concluded:

"It seems as if every time [defendant] has interaction with other human beings, something bad happens, and there is a fight and it's a consistent pattern, and in large part undoubtedly due to the fact that at the age of 32, he really hasn't ever taken any meaningful steps to address these substance abuse issues. This is sitting in the courtroom a ticking time bomb just waiting for something else to happen. Maybe the next time it won't be a broken leg, maybe he'll hit somebody, they'll fall, hit their head on the concrete and die. That's what this case is."

The court sentenced defendant to eight years' imprisonment.

¶ 21        The trial court informed defendant of his appeal rights, including informing him of the necessity of filing a postsentencing motion if he wished to challenge his sentence on appeal. He advised defendant to take time to think through his options. Counsel informed the court that defendant wanted to file a notice of appeal immediately. Defendant filed a timely notice of appeal.

¶ 22        This appeal followed.

¶ 23                              II. ANALYSIS

¶ 24        Appellate counsel moves for leave to withdraw. Counsel supports her motion with a memorandum of law providing a statement of facts. In the memorandum, counsel states she considered raising two issues on defendant's behalf: (1) whether the evidence was sufficient to support defendant's conviction and (2) whether defense counsel was ineffective for failing to file a postsentencing motion.

¶ 25        We consider appellate counsel's motion to withdraw under the procedure set out in *Anders*. After examining the record, we agree that the two issues counsel identifies lack arguable

merit, and we have identified no other issues of arguable merit. We further note that defendant's response to the motion merely asked for different counsel, without suggesting the existence of any issues of merit. We thus need not further address the response. We therefore grant counsel's motion to withdraw and affirm the trial court's judgment.

¶ 26                                    A. The Sufficiency of the Evidence

¶ 27        When the sufficiency of the evidence is at issue, the applicable standard of review is the familiar one of *Jackson v. Virginia*, 443 U.S. 307 (1979). See *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (adopting the standard in *Jackson*). Under *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson*, 443 U.S. at 319.

¶ 28        A person commits aggravated battery "when, in committing a battery, other than by the discharge of a firearm, he or she knowingly *** [c]auses great bodily harm or permanent disability or disfigurement." 720 ILCS 5/12-3.05(a)(1) (West 2020). For the purposes of proving a charge of simple battery, proving "bodily harm" requires adequate evidence of "physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent." *People v. Mays*, 91 Ill. 2d 251, 256 (1982). The increment in harm needed to elevate "bodily harm" to "great bodily harm" (such as is required to elevate battery to aggravated battery based on great bodily harm) " 'does not lend itself to a precise legal definition' " *People v. Mandarino*, 2013 IL App (1st) 111772, ¶ 63 (quoting *In re J.A.*, 336 Ill. App. 3d 814, 815 (2003)). However, great bodily harm as an element of aggravated battery is an " 'injury of a greater and more serious nature' " than bodily harm as an element of simple battery. *Id.* (quoting *J.A.*, 336 Ill. App. 3d at 815).

¶ 29　　　　　　Once a defendant properly raises self-defense, "the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense." *People v. Lee*, 213 Ill. 2d 218, 224 (2004). "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself *** against such other's imminent use of unlawful force." 720 ILCS 5/7-1(a) (West 2020). "[H]e is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." *Id.*

¶ 30　　　　　　Here, it would be frivolous to argue that *no* rational trier of fact could conclude that the State had failed to prove the elements of aggravated battery or that it failed prove that defendant did not act in self-defense. The evidence was overwhelming that defendant struck Streitmatter in the jaw. Sammon, the grandmother of defendant's child, was present and recognized him. Moreover, the security recordings showed his face clearly. The evidence of great bodily harm was similarly overwhelming. The stipulated medical evidence showed that Streitmatter had suffered a fractured fibula—obviously more than the bruises or abrasions necessary to show bodily harm. Further, Streitmatter testified his face was still numb from defendant's punch and that he still could not move the left side of his face. Finally, it would be frivolous to argue that *no* rational trier of fact could conclude that the State had proved defendant was not justified in his use of force. It is true the security videos showed, and Streitmatter admitted, that Streitmatter was "in [defendant's] face." However, the evidence easily supported the conclusion that defendant could not have had a reasonable fear of imminent force from Streitmatter. The security videos showed that Streitmatter never acted in a way that suggested he was about to apply force to defendant. When he approached

defendant, he had one arm extended and pointing to the door and one arm at his side. Nothing in his gestures or posture suggested imminent action. Accordingly, we agree that a challenge to the sufficiency of the evidence to convict defendant of aggravated battery would lack arguable merit.

¶ 31                                    B. Ineffective Assistance of Counsel

¶ 32        Claims of ineffective assistance of counsel are governed by the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). Generally, a viable claim of ineffective assistance requires a showing by the defendant both (1) that his counsel's performance was deficient and (2) that the deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687. To establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Here, we agree with appellate counsel that defendant would be unable to show he suffered prejudice due to counsel's failure to file a postsentencing motion. See *People v. Coleman*, 183 Ill. 2d 366, 397-98 (1998) ("Courts, however, may resolve ineffectiveness claims under the two-part *Strickland* test by reaching only the prejudice component, for lack of prejudice renders irrelevant the issue of counsel's performance.").

¶ 33        In our review of the record, we did not find any sentencing issues that would have had merit had they been preserved in a posttrial motion. "[A] constitutional sentence, devoid of error and resulting from a trial judge's proper exercise of discretion, shall be affirmed on review." *People v. Webster*, 2023 IL 128428, ¶ 32. That same review necessarily leads us to conclude that no issue defense counsel could have raised in the postsentencing motion would have been one the trial court was *required* to grant; that is, the motion could not have pointed to any error or abuse of discretion. Therefore, the most a postsentencing motion could do would be to ask the court to

- 9 -

apply its discretion to reduce defendant's sentence. We thus *cannot* say that "there is a reasonable probability that, but for counsel's" failure to file a postsentencing motion, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Accordingly, we agree with appellate counsel that defendant cannot make a nonfrivolous argument that he was prejudiced by counsel's failure to file a posttrial motion.

¶ 34                                    III. CONCLUSION

¶ 35            For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 36            Affirmed.