2026 IL App (1st) 240189-U

FIFTH DIVISION
March 27, 2026

No. 1-24-0189

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 CR 6156 |
| | ) | |
| OMAR RAMIREZ, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's sentence for first degree murder is affirmed where the trial court did not abuse its discretion in imposing sentence.

¶ 2    Defendant Omar Ramirez was originally sentenced to 50 years in prison for first degree murder, plus 25 years in prison for personally discharging the firearm used during the offense, for a total sentence of 75 years. On appeal from the denial of leave to file a successive petition for relief under the Postconviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016), this court remanded for a new sentencing hearing, and the trial court sentenced Mr. Ramirez to 35 years

in prison. Mr. Ramirez, who was 17 years old at the time of the offense, appeals, arguing that his sentence is excessive because the trial court focused on the seriousness of the offense and failed to adequately consider the juvenile sentencing factors and mitigating evidence. While we agree with Mr. Ramirez that there are significant mitigating factors in this case, we do not find that the trial court abused its discretion here, and we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Because this appeal relates solely to the sentence imposed following the resentencing hearing, we only briefly note the trial proceedings where they are relevant to sentencing considerations. A more detailed discussion of the trial evidence can be found in our decision on direct appeal. *People v. Ramirez*, 1-04-0289 (2005) (unpublished order under Illinois Supreme Court Rule 23).

¶ 5    On January 3, 2001, Mr. Ramirez, then 17 years old, was riding as a passenger in the front seat of the vehicle driven by Javier Diaz, a fellow member of Mr. Ramirez's street gang, La Raza. Upon approaching the 1400 block of Harding Avenue in Chicago, an area considered to be the territory of the rival Maniac Latin Disciples street gang, Mr. Ramirez discharged a firearm at a group of rival gang members and killed Enrique Morales. Forensic evidence showed that four 9-millimeter cartridge casings recovered from the scene were discharged from the same firearm and, based on their placement, were discharged as the shooter was moving. Forensic evidence also showed that three .380 cartridge casings were discharged from another firearm, the shooter of which had been stationary. Mr. Morales died from multiple gunshot wounds.

¶ 6    Mr. Ramirez testified at trial that he entered the vehicle with Mr. Diaz to smoke marijuana. When the vehicle approached the intersection of Harding Avenue and LeMoyne Street, he observed about six members of the rival gang. The group of rival gang members were being

disrespectful, and he heard more than one gunshot and felt scared that they were shooting at him. Mr. Diaz told Mr. Ramirez to grab the firearm placed between the driver and passenger seats and to shoot. Mr. Ramirez did so, discharging the gun four times. Mr. Ramirez did not aim at anyone while firing and did not try to shoot anyone.

¶ 7    Mr. Ramirez's videotaped statement following his arrest was published to the jury and entered into evidence. He stated that after he finished shooting, one of the rival gang members started shooting back.

¶ 8    The jury found Mr. Ramirez guilty of first degree murder and further found that he personally discharged the firearm that caused the victim's death (720 ILCS 5/9-1(a)(1) (West 2000)).

¶ 9    Following a sentencing hearing, the trial court sentenced Mr. Ramirez to 50 years in prison for first degree murder, plus a 25-year sentencing enhancement for personally discharging the firearm that caused the victim's death, for a total of 75 years in prison.

¶ 10    On direct appeal, this court affirmed Mr. Ramirez's conviction, rejecting his arguments that he should have been convicted only of second degree murder and that his sentence was excessive. *Ramirez*, No. 1-04-0289 (2005) (unpublished order under Illinois Supreme Court Rule 23).

¶ 11    On October 23, 2006, Mr. Ramirez filed a petition for postconviction relief under the Act, arguing that his sentence was unconstitutional because it was imposed without consideration of the objective of restoring him to useful citizenship. The trial court denied the petition on *res judicata* grounds, as his claim was already raised and considered by this court on direct appeal. We affirmed. *People v. Ramirez*, No. 1-07-0714 (2009) (unpublished order under Illinois Supreme Court Rule 23).

¶ 12     On September 27, 2017, Mr. Ramirez moved for leave to file a successive postconviction petition under the Act. He argued that his sentence, for an offense he committed when he was 17 years old, was an unconstitutional *de facto* life sentence under *Miller v. Alabama*, 567 U.S. 460, 479 (2012), and its progeny. The trial court denied leave to file, finding that Mr. Ramirez failed to satisfy the cause-and-prejudice test because his sentence was not a *de facto* life sentence. On February 7, 2020, this court granted an agreed motion for summary disposition, reversing the trial court's denial of leave to file, vacating Mr. Ramirez's 75-year prison sentence, and remanding for a new sentencing hearing in compliance with *People v. Buffer*, 2019 IL 122327, ¶ 40 (holding that any sentence greater than 40 years is a *de facto* life sentence) and 730 ILCS 5/5-4.5-105 (West 2020) (juvenile sentencing factors that took effect on January 1, 2016). *People v. Ramirez*, No. 1-18-1490 (Feb. 7, 2020) (disposition order).

¶ 13     On remand, a new presentence investigation report (PSI) was filed. The PSI does not show any prior criminal history. In the PSI, Mr. Ramirez reported that "he did not have a great childhood." His father was murdered when he was three years old, and his brothers physically abused him when he was young. Mr. Ramirez was raised in a dirty, roach-filled house with no heat at times. He had a learning disability and was enrolled in special education classes. He graduated eighth grade and did not attend high school but earned his high school diploma in 2021 while incarcerated.

¶ 14     Mr. Ramirez had lived in a high crime area where drugs were easily available. He reported that he had used cocaine and marijuana "on a daily basis" for an unspecified period but stated that he "d[id] not have any current alcohol or drug issues." Mr. Ramirez belonged to the La Raza street gang from ages 15 to 17.

¶ 15     According to the PSI, Mr. Ramirez reported he had been dedicating himself to learning and

rehabilitating himself by working and completing various educational courses. Mr. Ramirez was proud of his position as a sanitation and laundry worker for the three years he had been awaiting resentencing, because eligibility for that position required no "tickets" or involvement in "trouble in the jail." He had completed over 50 online educational courses and wanted to learn and not make the same mistakes in the future. The author of the PSI noted that Mr. Ramirez "wished he had the power to take it back and feels very regretful about the incident."

¶ 16    At the resentencing hearing, the State presented a victim impact statement from the victim's sister and mother.

¶ 17    The defense called Dr. James Garbarino, Ph.D., who testified as an expert in developmental psychology. Dr. Garbarino testified that Mr. Ramirez was bullied in school because of his learning disability. He testified that an adolescent brain is more impulsive and susceptible to negative peer influence. He also testified that the traumatic events in Mr. Ramirez's childhood, as well as his upbringing in a violent environment, caused him to develop a "war zone mentality," which made him more likely to feel threatened and react violently. Dr. Garbarino thought Mr. Ramirez showed good prospects for potential and actual rehabilitation. He also opined that, "in most cases," a sentence of twenty years was sufficient time for a juvenile offender to reach mental maturity and use that maturity to rehabilitate himself or herself. Regarding the specific facts of the shooting, Dr. Garbarino testified "I don't know of any evidence that the nature of the crime itself predicts much about their long-term future."

¶ 18    Dr. Garbarino prepared a mitigation report, which provided his developmental analysis of Mr. Ramirez in light of *Miller*. Dr. Garbarino assessed Mr. Ramirez under the "Adverse Childhood Experiences" (ACE) Scale, which was a series of 10 questions about childhood experiences that "proved to be powerful in accounting for differences in negative outcomes extending into

adulthood." Mr. Ramirez received a score of 6, which was a score worse than 97 out of 100 Americans growing up. The ACE risk factors that Mr. Ramirez reported included "being subject to psychological maltreatment, experiencing extreme physical assault in the form of discipline, experiencing parental separation, being neglected, living with a substance abuser in the household, having domestic violence in his household, and living with a household member who went to prison."

¶ 19 In the mitigation report, Dr. Garbarino stated that Mr. Ramirez's current status showed that he was not one of those " 'rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility.' " Dr. Garbarino noted that Mr. Ramirez had "moved from being a traumatized, troubled youth to being a positive adult in the 20 years since his crime, trial and incarceration." He believed Mr. Ramirez was "well-positioned to make a successful transition back into the community and to do so in a positive way, as a contributing member of society."

¶ 20 Mr. Ramirez provided more than 30 letters of support from friends and family members, as well as staff officers at the Cook County Department of Corrections (CCDOC).

¶ 21 CCDOC officer Kevin Harris testified that he supervised Mr. Ramirez's employment in jail. Mr. Ramirez had access to part of the jail that most did not because he was viewed as dependable and trustworthy. Mr. Ramirez had worked about 16 hours a day, almost every day, for the past three years. Mr. Ramirez lacked a disciplinary record and had no gang ties in jail. Mr. Harris had known Mr. Ramirez for three years and described him as a hard worker and respectable, stating he had never been a problem. Mr. Harris also said that he had never before testified on behalf of an inmate.

¶ 22 Mr. Ramirez's cousin testified that Mr. Ramirez grew up in a very low-income neighborhood with "a lot of gang activity." She had seen a change in Mr. Ramirez, who was very

remorseful of the crime and repented everything that happened. Mr. Ramirez's nephew testified that Mr. Ramirez had mentored him during Mr. Ramirez's incarceration, speaking about morals and teaching him to stay on the path of self-improvement.

¶ 23    In allocution, Mr. Ramirez repeatedly expressed remorse for his actions, apologized to the victim's family, emphasized that he had taken steps during his incarceration to better himself, had turned to Christianity, received his high school diploma, and had remained free from any gang associations.

¶ 24    The trial court sentenced Mr. Ramirez to 35 years in prison. In imposing the sentence, the trial court stated it had "taken into consideration and [would] take into consideration all the factors in aggravation and mitigation without specifically going through the list." The court explained that it did not place "any greater weight to any one factor in aggravation or mitigation and any other factor." It emphasized the specific intent of the crime, noting that Mr. Ramirez and the driver "were in a neighborhood looking for other gang bangers to shoot." The trial court also took issue with Dr. Garbarino's statement that a minimum sentence of twenty years would be appropriate. In the trial court's view, a sentence of 20 years would "diminish the serious aggravation and importance of what happened out there to this particular victim." The trial court stated that the sentence was necessary to deter crime. The court also noted Mr. Ramirez's juvenile brain, weak family structure, statement of remorse, and efforts at rehabilitation. The court found Mr. Ramirez's allocution "persuasive" and "a large portion of the mitigation was effective and persuasive in terms of especially rehabilitative potential." The court noted that Mr. Ramirez had displayed over the past almost 20 years an attempt to rehabilitate himself or at least become educated, and to live with his mistakes and ensure he did not make them again. The trial court also noted that Mr. Ramirez would "be eligible for parole after 20 years."

¶ 25    Mr. Ramirez filed a motion to reconsider his sentence, arguing the sentence was excessive. The trial court denied the motion, stating that it had considered Mr. Ramirez's rehabilitative potential, prior criminal background, and susceptibility to gang violence, among other factors. The court believed that the 35-year prison sentence was a "gift" and noted again that Mr. Ramirez would be eligible for parole after 20 years.

¶ 26                                II. JURISDICTION

¶ 27    The trial court denied Mr. Ramirez's motion to reconsider his sentence on January 18, 2024, and Mr. Ramirez timely filed his notice of appeal that same day. We have jurisdiction over this appeal under article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. Mar. 12, 2021), governing appeals from final judgments in criminal cases.

¶ 28                                III. ANALYSIS

¶ 29    On appeal, Mr. Ramirez argues that the trial court imposed an unconstitutional sentence, failing to adequately consider the statutory juvenile sentencing factors and, instead, focusing on the seriousness of the offense, in violation of *Miller*. Mr. Ramirez requests this court to either reduce his sentence closer to the minimum or vacate it and remand for resentencing.

¶ 30    The Illinois Constitution requires that all sentences "be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11; *People v. Deleon*, 2025 IL App (1st) 211454, ¶ 52. Therefore, in imposing a sentence, the trial court must consider all factors in aggravation and mitigation. *Deleon*, 2025 IL App (1st) 211454, ¶ 52.

¶ 31    In imposing a criminal sentence, the trial court considers a wide variety of factors in aggravation, including the harm caused by the defendant's conduct, the defendant's criminal

history, the necessity of the sentence to deter others from committing the same crime, and the commission of an offense in relation to an organized gang. See 730 ILCS 5/5-5-3.2(a)(1)-(15) (West 2022). In mitigation, the court considers whether the defendant acted under a strong provocation, whether the defendant's criminal conduct was induced or facilitated by someone other than the defendant, and whether the character and attitudes of the defendant indicate that he is unlikely to commit another crime. See 730 ILCS 5/5-3.1(a)(1)-(19) (West 2022).

¶ 32     In sentencing an individual who was under the age of 18 at the time of an offense, the trial court must consider the following additional mitigating factors:

"(1)     the person's age, impetuosity, and level of maturity at the time of the offense, including the ability to consider risks and consequences of behavior, and the presence of cognitive or developmental disability, or both, if any;

(2)     whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences;

(3)     the person's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma;

(4)     the person's potential for rehabilitation or evidence of rehabilitation, or both;

(5)     the circumstances of the offense;

(6)     the person's degree of participation and specific role in the offense, including the level of planning by the defendant before the offense;

(7)     whether the person was able to meaningfully participate in his or her defense;

(8)     the person's prior juvenile or criminal history; and

(9)    any other information the court finds relevant and reliable, including an expression of remorse, if appropriate. However, if the person, on advice of counsel chooses not to make a statement, the court shall not consider a lack of an expression of remorse as an aggravating factor." 730 ILCS 5/5-4.5-105(a) (West Supp. 2023).

¶ 33    A sentence must be based upon the particular circumstances of each individual case. *People v. Webster*, 2023 IL 128428, ¶ 29. "The trial court is presumed to consider all relevant factors and any mitigating evidence presented." (Internal quotation marks omitted.) *People v. Williams*, 2019 IL App (1st) 173131, ¶ 21. The defendant bears the burden of making an affirmative showing that the sentencing court did not consider the relevant factors. *Id.*

¶ 34    While a trial court is presumed to have considered all relevant factors and any mitigating evidence, it has no duty to recite or assign a particular value to them. *Id.* The trial court explicitly mentioning one factor in mitigation does not mean that the court ignored the others. *People v. Burton*, 184 Ill. 2d 1, 34 (1998).

¶ 35    Absent an abuse of discretion by the trial court, its sentence cannot be reduced on review. *Webster*, 2023 IL 128428, ¶ 29. A sentence within statutory limits will only be deemed an abuse of discretion if it is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense. *People v. Stacey*, 193 Ill. 2d 203, 210 (2000).

¶ 36    The sentencing range for first degree murder is 20 to 60 years in prison. 730 ILCS 5/5-4.5-20 (West 2022). Because the jury found that Mr. Ramirez had discharged the gun that caused Mr. Morales's death, Mr. Ramirez was eligible for a 25-year sentencing enhancement which, for him, was discretionary because of his age at the time of the crime. 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2022); 730 ILCS 5/5-4.5-105(b) (West Supp. 2023) (where offender was under age of 18 at time of offense, trial court has discretion to decline to impose any otherwise applicable sentencing

enhancement based upon personal discharge of a firearm). Thus, Mr. Ramirez faced a discretionary sentence from 20 to 85 years in prison. *Webster*, 2023 IL 128428, ¶ 20. Mr. Ramirez's resentence of 35 years in prison falls at the low end of this statutory range and is presumed proper. *Id.* ¶ 21.

¶ 37    Mr. Ramirez contends that the trial court did not adequately consider that his upbringing and youth made him susceptible to peer pressure and impulsivity, that he did not plan to kill anyone, that a fellow gang member ordered him to shoot, and that he expressed remorse. He asserts the trial court also failed to adequately consider Dr. Garbarino's mitigation testimony and report. Mr. Ramirez points out that the trial court failed to mention most of the statutory mitigating factors. Mr. Ramirez also stresses his extraordinary record of exemplary behavior while incarcerated, which he argues reflects his strong potential for rehabilitation and demonstrates the actual rehabilitation he has accomplished.

¶ 38    While the trial court did not explicitly recite each statutory factor in mitigation or state the respective weight given to each factor, it was not required to do so. *Williams*, 2019 IL App (1st) 173131, ¶ 21. The trial court is presumed to consider the mitigation evidence presented to it. *Id.* Also, here the trial court explicitly stated that it considered "all the factors in aggravation and mitigation." In announcing its sentence, the court recited many mitigation factors, including several of those that Mr. Ramirez now claims that the court failed to adequately consider, such as Mr. Ramirez's upbringing, youthfulness, remorse, and rehabilitation.

¶ 39    Mr. Ramirez also argues that the trial court improperly "repeatedly shift[ed] its focus back to the seriousness of the offense." The state responds with the familiar proposition that the seriousness of the offense "is the most important sentencing factor." While that proposition has been repeated over the years in a number of appellate court decisions, including *People v. Williams*, 2017 IL App (1st) 150795 ¶44, cited by the State here, we have found no case in which it was ever

advanced or adopted by our supreme court. Our constitution, as our supreme court has recognized, requires that "[a]ll penalties shall be determined *both* according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Emphasis added.) Ill. Const. 1970, art. I, § 11. See *People v. Ligon*, 2016 IL 118023, ¶ 10. That constitutional language suggests, if anything, that the two considerations rest on equal footing.

¶ 40    Mr. Ramirez counters the State's argument with the contention that the seriousness of the offense cannot be the most significant factor for the sentencing of juveniles, in light of our supreme court's repeated recognition in cases like *People v. Buffer*, 2019 IL 122327, ¶17, that minors have greater prospects for reform than adults. *Buffer* does not say that explicitly, but does recognize that "the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." *Id.* (quoting *Miller*, 567 U.S. at 472.

¶ 41    We question whether the seriousness of the offense would be the most important sentencing factor in this case, but that gives us no basis to reverse here. The trial judge said specifically that he was *not* giving greater weight to any one factor and expressly recognized that Mr. Ramirez had displayed significant "rehabilitative potential." Moreover, the trial judge did not "repeatedly" shift back to the seriousness of the offense. The judge addressed the facts of the case once while explaining his sentence and for approximately the same, or less time, than he spent discussing the mitigation.

¶ 42    We also agree with the trial court that it is significant that, unlike many juvenile defendants, Mr. Ramirez has parole available to him. The parole review statute for youthful offenders who were under the age of 21 at the time of their offenses provides that:

> (b)    *** A person under 21 years of age at the time of the commission of first

degree murder who is sentenced on or after June 1, 2019 *** shall be eligible for parole review by the Prisoner Review Board after serving 20 years or more of his or her sentence or sentences ***.

* * *

(j)      *** In considering the factors affecting the release determination under 20 Ill. Adm. Code 1610.50(b), the Prisoner Review Board panel shall consider the diminished culpability of youthful offenders, the hallmark features of youth, and any subsequent growth and maturity of the youthful offender during incarceration

* * *

(m)      *** [A] person denied parole under subsection (j) of this Section, who is serving a sentence or sentences for first degree murder or aggravated criminal sexual assault shall be eligible for a second and final parole review by the Prisoner Review Board 10 years after the written decision under subsection (k) of this Section. 730 ILCS 5/5-4.5-115 (West 2022).

¶ 43    Mr. Ramirez , who was resentenced on October 12, 2023, is eligible for parole under this statute. Much of the evidence he presented at resentencing about his outstanding record in prison and his immaturity at the time of the crime will be relevant there. We find this parole eligibility significant and note that it distinguishes this case from *People v. McKinley*, 2020 IL App (1st) 191907, which Mr. Ramirez relies on and in which the defendant received a similar, but longer sentence at his first post-*Miller* resentencing.

¶ 44    Finally, we note that the 35-year sentence is a significant reduction—more than a 50% reduction—of the original sentence of 75 years. The original sentence was comprised of 50 years for first degree murder and 25 years for the discretionary firearm enhancement. The new sentence

is for 35 years. The trial court not only declined to impose the firearm enhancement but reduced the base sentence for the offense by 15 years, for a total reduction of 40 years.

¶ 45    In short, Mr. Ramirez is requesting that this court reweigh the statutory factors in aggravation and mitigation and place greater weight on the mitigating evidence than the trial court did. Although we find that mitigation to be compelling, that is not our role and we cannot do so. Our supreme court has admonished us that a reviewing court "must not substitute its judgment for that of the trial court merely because it would have weighed the factors differently." *People v. Clark*, 2024 IL 127838, ¶ 76.

¶ 46    In sum, Mr. Ramirez has failed to establish an abuse of discretion. See *People v. Burton*, 2015 IL App (1st) 131600, ¶ 38 (the defendant bears the burden of affirmatively showing that the trial court failed to consider the mitigating evidence presented at the sentencing hearing). Despite the significant mitigating evidence presented, given the nature and some of the details of the crime itself, the possibility of parole, and the significant reduction from the 75 years originally imposed, we cannot find that the 35-year sentence is greatly at variance with the spirit and the purpose of the law or manifestly disproportionate to the nature of the offense. Accordingly, we will not disturb the trial court's resentence of 35 years in prison.

¶ 47                        IV. CONCLUSION

¶ 48    For the foregoing reasons, we affirm the judgment of circuit court of Cook County.

¶ 49    Affirmed.